HERMAN LIEBMAN, EXECUTOR (ESTATE OF ROSE BLUTSTEIN), ET AL. *v.* THE SOCIETY OF OUR LADY OF MOUNT ST. CARMEL, INC.

LUCY ANDREOLI *v.* THE SOCIETY OF OUR LADY OF MOUNT ST. CARMEL, INC.

KING, C. J., MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued April 14—decided May 6, 1964

*William F. Gallagher,* with whom were *Bernard Poliner* and, on the brief, *Morton E. Cole* and *Cyril Cole,* for the appellants (plaintiffs in each case).

*Valentine J. Sacco,* with whom was *Anthony L. DiLorenzo,* for the appellee (defendant in each case).

KING, C. J.  These two cases were tried together. Rose Blutstein, the plaintiff's decedent in the Liebman case, and Lucy Andreoli, the plaintiff in the Andreoli case, were alleged to have fallen, practically simultaneously, while together descending the outside veranda steps or stairway of a two-tenement house owned by the defendant corporation. In each case a verdict was rendered for the defendant, and in each an appeal was taken. By stipulation the appeals were combined, and a single record was printed covering both cases. For convenience the Andreoli case alone will be referred to since no differentiation between the two cases is made on this appeal, which is based on three rulings on evidence. The first two rulings will be considered together.

## I

The plaintiff called Edward M. Hart as a witness, and on direct examination he testified that he had charge of the defendant's investigation of the case (apparently for the defendant's insurer) and that James Quagliano, then secretary of the defendant, made a signed preliminary report. Hart was then

asked to produce for inspection by the plaintiff's counsel a carbon copy of the report which he testified he had with him in court. The defendant's counsel objected to the report being shown to the plaintiff's counsel, and the court, after examining it, asked the purpose of the request for inspection. The plaintiff's counsel stated that the purpose was to see if there was any admission made by the defendant or one of its officers concerning the accidents. The court stated that the report contained no admission. The plaintiff then asked that the report be marked for identification. The court ordered it so marked. No exception was taken, and the court thereafter ordered the exhibit sealed and placed in the custody of the clerk. It did not permit inspection by the plaintiff's counsel. The plaintiff's amended assignment of errors attacks the court's ruling that the statement contained no admissions. Since we are considering two similar rulings, we discuss them on their merits instead of ignoring the first for lack of a proper exception.

Thereafter, Hart, in response to further inquiry by the plaintiff's counsel, testified that another written, signed statement made by an officer of the defendant was in the possession of the defendant's attorney. The plaintiff then demanded the production for inspection of this statement to see if it contained any admissions. It was another statement given by Quagliano and was produced for examination by the court, which stated that it would be admissible if inconsistent with any testimony which Quagliano had given, or might give, as a witness. Counsel for the plaintiff, however, told the court that he wanted to use it as an admission of the defendant. He made no claim for the use of either statement as an inconsistent statement of

Quagliano, either then or at any later time in the trial. The court ordered this second statement marked for identification. The plaintiff complains that she was not allowed to inspect this statement, which the court, impliedly at least, ruled did not contain any admission.

The court had the right and duty to exercise a sound discretion in allowing or refusing the inspection of each statement or report under the rule of cases such as *Banks* v. *Connecticut Ry. & Lighting Co.*, 79 Conn. 116, 118, 64 A. 14, and *Hurley* v. *Connecticut Co.*, 118 Conn. 276, 284, 172 A. 86. The plaintiff made no attempt to show that Quagliano had any authority to make any admission on the part of the defendant, and unless he had, neither statement could have been an admission of the defendant. *Builders Supply Co.* v. *Cox*, 68 Conn. 380, 381, 36 A. 797; *Morse* v. *Consolidated Ry. Co.*, 81 Conn. 395, 399, 71 A. 553; *Voegeli* v. *Waterbury Yellow Cab Co.*, 111 Conn. 407, 411, 150 A. 303; *Whiteman* v. *Al's Tire & Service Garage, Inc.*, 115 Conn. 379, 384, 161 A. 519; *Hurley* v. *Connecticut Co.*, supra, 285; *Graham* v. *Wilkins*, 145 Conn. 34, 41, 138 A.2d 705. Since Quagliano was not himself a party, he, of course, could make no admissions as an individual. *Graham* v. *Wilkins*, supra, 40; *Perrelli* v. *Savas*, 115 Conn. 42, 43, 160 A. 311.

The mere fact that the defendant was a corporation and that Quagliano was then its secretary would not, without more, justify an inference by the court that Quagliano had authority to make admissions for the defendant. This was particularly true in this case, since Quagliano was the tenant of the second-floor apartment and the accident occurred just after the plaintiff Andreoli and the plaintiff Liebman's decedent, both guests of

the Quaglianos for the evening, had left the apartment to go to their respective homes. There is nothing to indicate that Quagliano had any duties with respect to the property. It was in his capacity as one having some knowledge of the accident, rather than as an officer of the defendant authorized to make admissions, that Quagliano appears to have given the statement. In the absence of any attempt to show agency on the part of Quagliano, who was known to the plaintiff to have been the maker of each statement, neither statement could have been, or could have contained, an admission by the defendant. There was no error in either ruling.

## II

Patsy Ricciardone was called as a witness by the defendant, and he testified that he was one of the guests at the Quagliano party. He was asked, and testified, as to where the two ladies fell. Counsel for the defendant then asked Ricciardone if he had not given a written statement in March, 1956, about two weeks after the accident. This question was objected to on the ground that the defendant was cross-examining its own witness. See cases such as *Mendez v. Dorman,* 151 Conn. 193, 197, 195 A.2d 561. The court excused the jury and asked the defendant's counsel whether he was claiming that the witness was hostile and was assured that hostility was claimed. In the absence of the jury, the court remarked that no hostility had yet been shown and told counsel for the defendant that he could attempt to show hostility. The witness claimed that he had been misled into making the statement, that the statement was incorrect, and that he proposed to tell the truth regardless of what he had been induced to put into the statement. The court did not, in

terms, state that it had found hostility established, but it allowed the March statement in evidence, solely as an inconsistent statement to attack credibility under the rule of cases such as *Sears* v. *Curtis*, 147 Conn. 311, 315, 160 A.2d 742, a case which the court cited to counsel at the time of the ruling. There was evidence from which the court could properly find hostility, and it is clear from the finding, considered as a whole, that the court, in effect, did so find. It would have clarified the ruling, however, had the court audibly announced its finding of hostility. So to do is obviously the better practice.

The plaintiff's basic claim was that the inconsistent statement of Ricciardone, since he had been called as a witness by the defendant, should not have been admitted to contradict Ricciardone unless the defendant's counsel had actually been surprised by the witness' testimony; and the plaintiff further claims that there was no surprise here, since counsel had reason to believe, before he called the witness, that he would testify contrary to his prior statement. The plaintiff claims that hostility alone is not enough, because, absent surprise, calling the witness would merely constitute a scheme to permit the introduction into evidence of the inconsistent statement, otherwise inadmissible, and thus to get it before the jury.

An inconsistent statement, although offered by the party calling the witness who is claimed to have made it, may be admitted where hostility, surprise or deceit is disclosed. But its admissibility must finally rest in the sound discretion of the trial court. *Mendez* v. *Dorman*, supra; *Gondek* v. *Pliska*, 135 Conn. 610, 616, 67 A.2d 552; *Carpenter's Appeal*, 74 Conn. 431, 436, 51 A. 126; *State* v. *Gargano*, 99 Conn. 103, 112, 121 A. 657; *Delfino* v. *Warners*

*Motor Express,* 142 Conn. 301, 307, 114 A.2d 205; notes, 74 A.L.R. 1042, 1063, 117 A.L.R. 326; 4 Jones, Evidence (5th Ed.) §§ 941-42; McCormick, Evidence §§ 33, 38; 3 Wigmore, Evidence (3d Ed.) §§ 898-99, 902-04.

Although counsel may have good ground for believing that a witness intends to testify in a manner contrary to a statement he has previously given, counsel may still call the witness to the stand under the belief that, when confronted by the prior statement, the witness will abandon efforts to deviate materially therefrom. *Carpenter's Appeal,* supra, 435. Under such circumstances, if the witness fails to testify in substantial accord with his prior statement, the court has discretion to permit the admission of the inconsistent statement, even though surprise, in the full sense of the word, is lacking. *London Guarantee & Accident Co.* v. *Woelfle,* 83 F.2d 325, 332-34 (8th Cir.); 3 Wigmore, op. cit. § 903, p. 396; note, "Impeaching One's Own Witness," 49 Va. L. Rev. 996, 1002; Slough, "Impeachment of Witnesses: Common Law Principles and Modern Trends," 34 Ind. L.J. 1, 10; Ladd, "Impeachment of One's Own Witness—New Developments," 4 U. Chi. L. Rev. 69, 84.

The court failed audibly to find surprise at the time of the evidential ruling as it had failed audibly to find hostility. The ruling admitting the evidence, however, was discretionary and could properly have been made without a finding of surprise. It is thus unnecessary to determine whether the court, in effect, did or did not find surprise.[1] The plaintiff

---

[1] Actually, the court, in a memorandum of decision refusing to set aside the verdict, stated that it found both hostility and surprise. There was support for such a statement, but, since the statement did not appear in the finding, we are not relying on it.

has failed to establish any abuse of discretion in the admission of the statement. *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 453, 74 A. 755.

There is no error in either case.

In this opinion the other judges concurred.