STATE OF CONNECTICUT *v.* RICHARD E. GALLAGHER

FILE No. 1057

STATE OF CONNECTICUT *v.* CAROL A. GALLAGHER

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1058

Argued January 25—decided April 16, 1982

*William J. Curran,* for the appellants (defendants).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, was *Susan A. Moch,* deputy assistant state's attorney, for the appellee (state).

DALY, J. A jury convicted the defendants of interfering with an officer in violation of General Statutes § 53a-167a, in connection with a neighborhood dispute in Milford. The defendants have each appealed from the judgment rendered thereon.[1]

The jury could reasonably have found the following facts: At approximately 11 a.m. on December 28, 1979, the complainant, who is a neighbor of the defendants, was in her garage when she noticed the defendant husband, Richard E. Gallagher, who was some 75 to 100 feet away, looking at her. The defendant husband thereafter moved toward his front porch, stopped, turned around and directed an abusive statement toward the complainant.[2] The complainant immediately summoned the police. Officer Michael Hanlon responded to the call and conversed with the complainant for a short period of time. Although Hanlon took no written statement from the complainant, he requested backup assistance for a possible arrest.

Three police cruisers subsequently arrived on the scene and Hanlon proceeded to knock on the defendants' door. The defendant wife, Carol A. Gallagher, admitted Hanlon into the defendants' residence after he had explained to her that he was investigating a neighborhood dispute. When inside, Hanlon indicated that he was investigating a neighbor's complaint concerning the defendant husband. After questioning the defendant husband, the officer, without a warrant or written complaint, reached over, placed his hand on the defendant husband's shirt and placed him under arrest for breach of the peace. In response, the defendant husband raised his fists and lunged at

---

[1] Because both cases arise out of the same factual circumstances and present identical issues, we have chosen to consider them together.

[2] The defendant reportedly queried, "Did you miss anything, you nosey bitch?"

Hanlon, while the defendant wife jumped on his arm, bringing him to his knees. Officer Osborn assisted in subduing the two defendants.

The defendants here appeal from their convictions on the charges of interfering with an officer and raise the following claims of error: (1) the court's failure to find that their constitutional rights under the fourth and fourteenth amendments to the constitution of the United States; (2) the court's refusal to grant their requests to charge; (3) the court's denial of their motions for a new trial; and (4) the court's denial of their motions for acquittal.

I

The defendants contend that their warrantless arrest on a misdemeanor charge, effectuated in their home, violated their rights under the fourth and fourteenth amendments to the federal constitution. In support for this contention, they cite *Payton* v. *New York,* 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), in which the United States Supreme Court held that the fourth amendment, as applied to the states through the fourteenth amendment, prohibits police officers from making warrantless and nonconsensual entries into the home of a suspect for purposes of a routine felony arrest. The defendants also cite our decision in *State* v. *Anonymous (1977–5),* 34 Conn. Sup. 531, 375 A.2d 417 (1977).

Both *Payton* and *Anonymous* involved warrantless, forcible entries by the police into the homes of suspects. The defendants here have failed to establish that the entry by police in this instance was either forcible or nonconsensual; in fact, both defendants concede in their briefs that officer Hanlon "was invited in [to the residence] by the defendant's wife Carol Gallagher." Accordingly, we find that neither

*Payton* nor *Anonymous* is relevant to the factual circumstances now before us and that no constitutional precept was violated.

Having gained entry with the consent of the defendant wife, Hanlon's conduct was governed by the provisions of General Statutes § 54-1f (a), which provides: "Peace officers . . . in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others." We have previously construed this portion of the statute to impose the speedy information condition in arrests for both felonies and misdemeanors, in derogation of the common law rule that information forming the basis of a felony arrest need not be received soon after the commission of the crime. *State* v. *Anonymous (1977-5),* supra, 538. While at common law an officer could make a warrantless arrest for certain misdemeanors committed only in his presence, § 54-1f (a) extended that right to cases where the arrest is made on the speedy information of others. *Sims* v. *Smith,* 115 Conn. 279, 282, 161 A. 239 (1932).

Where, as here, the arrest took place approximately twenty minutes after the occurrence of the disputed incident,[3] it cannot be otherwise but that the officer acted on the speedy information of another. We conclude that the officer's entry onto the premises was lawful and in compliance with § 54-1f (a).

## II

The defendants also aver that the trial court wrongfully refused to read to the jury their proposed requests to charge. As a rule, error in a refusal to charge occurs only where the court has not fairly covered the particular point raised and where the

---

[3] The incident occurred at approximately 11 a.m. and the ensuing arrest occurred at 11:20 a.m.

proffered request is both pertinent to the claims of proof and correct in law. *State* v. *Vennard,* 159 Conn. 385, 399, 270 A.2d 837 (1970); see *State* v. *Tinsley,* 181 Conn. 388, 394, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981).

The first of the two proposed requests to charge purported to instruct the jury concerning the speedy information statute, § 54-1f (a).[4] This suggested instruction, however, was both incomplete and inadequate because it failed to enlighten the jury that the arresting officer must be authorized to make an arrest on the speedy information of others. The trial court correctly refused to charge the jury as the defendants requested, for the proposed charge was incorrect as a matter of law.

In the second proposed instruction,[5] the defendants attempted to inject portions of the charge given to the jury in *State* v. *Anonymous (1977–5),* supra, 546–47. As we have previously concluded, however, *State* v. *Anonymous (1977–5)* is inapposite where, as here, the challenged entry is consensual and not forcible.

Finally, the defendants contend that the trial court erroneously charged the jury concerning General Statutes § 53a-23, which provides that "[a] person is not justified in using physical force to resist an arrest

---

[4] "The crimes which the Defendants are charged with are misdemeanors and not felonies. Therefore, if you find that Officer Hanlon did not have probable cause to make an arrest and formulated a definite intention of arresting the Defendants he was required to seek a warrant before making the arrest. Furthermore, for Officer Hanlon to make a warrantless arrest in the home of the Defendants, absent exigent circumstances, is a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States."

[5] "Proof that the officers entered the home of the Defendants legally is an essential element of the State's case. If the entry by the officers into the home of the Defendants was illegal they were not performing their duties, and the Defendants cannot be found guilty of interfering for the reason that any interference under those circumstances would not have occurred while the officers were in the performance of their duties."

by a reasonably identifiable peace officer, whether such arrest is legal or illegal." We are not bound to consider this claimed error, however, because the defendants did not except to the charge as read to the jury.[6] Practice Book § 854. Where there are no objections to a charge, we must presume that it is correct. Holden & Daly, Connecticut Evidence § 36. Moreover, the defendants have not briefed this issue and we consider it abandoned. *State* v. *Daniels,* 180 Conn. 101, 104, 429 A.2d 813 (1980); *State* v. *Roberson,* 173 Conn. 97, 98, 376 A.2d 1089 (1977). Accordingly, we find no error in the trial court's failure to charge as requested by the defendants.

## III

The defendants filed motions for a new trial claiming that the state had not produced sufficient evidence to prove that they had the requisite intent to interfere with an officer. Practice Book § 902 provides that a defendant may receive a new trial "if it is required in the interests of justice" and "[f]or any . . . error which the defendant can establish was materially injurious to him." The intent of an actor is a question for the trier of fact and the conclusions of the jury must stand unless they are unreasonable. *State* v. *Just,* 185 Conn. 339, 355, 441 A.2d 98 (1981). We find that the jury could reasonably and logically have inferred the requisite intent from the defendant husband's raising of his fists and from the defendant wife's jumping on the officer's arm with her arm and body. Accordingly, we conclude that no ground existed for which the trial court should have granted the defendants' motion for a new trial.

---

[6] "The Court: Ladies and gentlemen of the jury, I have concluded the charge of the Court. You may now retire to the jury room and commence your deliberation. We will send in the information and exhibits.

(Jury now taken to the jury deliberation room.)

The Court: Any exceptions?

Mr. Curran: No exceptions."

## IV

The defendants' final claim of error is the trial court's denial of their motions for acquittal. Practice Book § 899 provides that "[i]f the jury return a verdict of guilty, the judicial authority, upon motion of the defendant . . . shall order the entry of a judgment of acquittal as to any offense specified in the verdict . . . for which the evidence does not permit a finding of guilty beyond a reasonable doubt." In determining whether the evidence is sufficient to sustain a verdict, "the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . ." *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980), citing *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). In applying this standard, we must construe the evidence adduced at trial in a light most favorable to the jury's verdict. *State* v. *Smith,* 185 Conn. 63, 71, 441 A.2d 84 (1981). We conclude that the evidence in this case was sufficient to establish the guilt of the defendants beyond a reasonable doubt.

There is no error.

In this opinion COVELLO and F. HENNESSY, Js., concurred.